# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# AIKEN DIVISION

| | |
|---|---|
| Linda K. Rushton and ) <br> Kenneth Rushton, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> United States of America and ) <br> Cintas Corporation No. 2, ) <br> ) <br> Defendants. ) <br> _____) | Civil Action No.: 1:15-cv-01378-JMC <br><br><br><br> **ORDER AND OPINION** |

Plaintiffs Linda K. Rushton ("Ms. Rushton") and her husband Kenneth Rushton filed this action seeking damages from Defendants the United States of America ("United States") and Cintas Corporation No. 2 ("Cintas") (collectively "Defendants") for injuries Ms. Rushton suffered on April 15, 2013, from an alleged slip and fall in the United States Post Office in Wagener, South Carolina.  (ECF No. 23 at 2 ¶ 8-9.)  Ms. Rushton allegedly tripped on a "ripple" in a mat when she entered the Post Office, and then fell resulting in "severe and permanent injuries."  (*Id.* at ¶ 9.)  Plaintiff Kenneth Rushton brings a claim for loss of consortium with his wife as a result of her injuries.  (*Id*. at ¶ 14.)  Plaintiffs allege that the United States was negligent in "failing to remove the ripple from the mat after it had actual or constructive notice; failing to warn; using a defective mat which would develop ripples in it; and continuing to use a defective mat after notice that it was defective[.]"  (*Id.* at 2 ¶ 12.)

Plaintiffs filed their initial Complaint on March 26, 2015 (ECF No. 1) against the United States, pursuant to the Federal Tort Claims Act ("FTCA"), and subsequently filed an Amended Complaint on March 30, 2016 adding Cintas Corporation as a defendant. (ECF No. 23.)[1]

This matter is before the court on the United States' Motion for Summary Judgment as to Plaintiff's claim for negligence against it. (ECF No. 51.) Plaintiffs responded to the Motion, and the United States replied. (ECF Nos. 60, 62.) For the reasons stated below, the court **GRANTS** the United States' Motion.[2]

## I. JURISDICTION

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1346(b)(1) because the United States is a defendant. Plaintiffs bring their claims against the United States pursuant to the FTCA, 28 U.S.C. § 2671, et seq.

## II. LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).

---

[1] Cintas Corporation is not the proper defendant because it has no "operating assets," thus the parties filed a Consent Motion, granted by the court, to substitute Cintas Corporation No. 2, the entity responsible for servicing the Post Office, for Cintas Corporation. (ECF Nos. 37 at 1, 38.)

[2] Plaintiff Kenneth Rushton's cause of action for loss of consortium requires proof that his injuries are a result of the United States' negligence. *See* S.C. Code Ann. § 15-75-20 (2017); *Williams v. Lancaster Cty. Sch. Dist.,* 631 S.E.2d 286, 294 (S.C. Ct. App. 2006) ("[ ] there must be some intentional or tortious conduct for a loss of consortium claim to stand.") The court finds that there was no negligence as a result of any action or omission by the United States; therefore, the court must grant the United States' Motion for Summary Judgment as to the claim for loss of consortium as well.

A genuine issue of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the non-moving party. *Id.*

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990) (citing *Pignons S.A. De Mecanique v. Polaroid Corp.*, 657 F.2d 482, 486 (1st Cir. 1981)). The non-moving party may not oppose a motion for summary judgment with mere allegations or denials of the movant's pleading, but instead must set forth specific facts demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 324 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249 (citing *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)). "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995) (citing *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)). "[T]he burden [to show no genuine issue of material fact] on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non[-]moving party's case." *Celotex Corp.,* 477 U.S. at 325.

"In [ ] a situation [where a party fails to make a showing sufficient to establish an essential element of their case, on which they will bear the burden of proof at trial], there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non[-]moving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to a judgment as a matter of law' because the non[-]moving party has failed to make a

3

sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp.*, 477 U.S. at 322–23.

### III. ANALYSIS

Pursuant to the FTCA, "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages[.]" 28 U.S.C. § 2674. The FTCA incorporates the law of the state under which the "act or omission complained of occurred." *Id.*; *see also Corrigan v. United States,* 815 F.2d 954, 955 (4th Cir. 1987). In this case, South Carolina law will govern.

Plaintiffs bring a negligence claim against the United States, thus in order to prove their claim under South Carolina law, they must show evidence that ". . . (1) defendant owed [Ms. Rushton] a duty of care; (2) defendant breached this duty by a negligent act or omission; (3) defendant's breach was the proximate cause of [Ms. Rushton's] injuries; and (4) [Ms. Rushton] suffered injury or damages." *Dorrell v. S.C. DOT*, 605 S.E.2d 12, 15 (S.C. 2004) (citation omitted).

Ms. Rushton was an "invitee" under South Carolina law, and with this designation, the Post Office only owed her a "duty of exercising ordinary care to keep the premises in reasonably safe condition." *Milligan v. Winn-Dixie Raleigh, Inc.*, 254 S.E.2d 798, 799 (S.C. 1979)[3]; *see also Sims v. Giles*, 541 S.E.2d 857, 861 (S.C. Ct. App. 2001) (an invitee is a business guest); (ECF No. 23 at 2 ¶ 8.) The Post office has a duty to invitees to "warn [them] of latent or hidden dangers of which [the Post Office] has knowledge or should have knowledge." *Larimore v. Carolina Power*

---

[3] *See also Denton v. Winn-Dixie Greenville, Inc.,* 439 S.E.2d 292, 293 (S.C. Ct. App. 1993) ("[a merchant] is not required to maintain the premises in such condition that no accident could happen to a patron using them.")

4

*& Light*, 531 S.E.2d 535, 538 (S.C. Ct. App. 2000) (citing *Callander v. Charleston Doughnut Corp.*, 406 S.E.2d 361 (S.C. 1991)). The Post Office does not have a duty to warn for "open and obvious dangers" unless the Post Office ". . . *should anticipate the harm despite such knowledge or obviousness*." *Callander,* 406 S.E.2d at 362 (alteration in the original) (citing Restatement (Second) of Torts § 343(A) cmt. f (1965)). This duty also includes the Post Office taking "reasonable steps to protect an invitee, 'if the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, . . . or fail to protect himself against it.'" *Id.*

As to the Post Office's duty to keep the premises in reasonably safe condition, "[in order] [t]o recover damages for injuries caused by a dangerous or defective condition on a storekeeper's premises, the plaintiff must show either (1) that the injury was caused by a specific act of the defendant which created the dangerous condition; or (2) that the defendant had actual or constructive knowledge of the dangerous condition and failed to remedy it." *Wintersteen v. Food Lion, Inc.*, 542 S.E.2d 728, 729 (S.C. 2001) (citing *Anderson v. Racetrac Petroleum Inc.*, 371 S.E.2d 530, 531 (S.C. 1988)). This applies to both foreign substances on the floor as well as mats. *See Wintersteen,* 542 S.E.2d 728; *Cook v. Food Lion, Inc.,* 491 S.E.2d 690, 691 (S.C. Ct. App. 1997).

    a. <u>The Parties' Arguments as to the Creation of a Dangerous Condition</u>

Plaintiffs argue that "summary judgment should be denied as the evidence supports an inference that the [Post Office] created a dangerous condition by using mats that had a propensity to buckle or wrinkle[,]" thus breaching their duty to keep the premises safe. (ECF No. 60 at 6.) Plaintiffs argue that *Cook v. Food Lion* governs this case and presents reasons to support denial of the United States' Motion. (*Id.* at 6.)

In *Cook*, ". . . Food Lion's employees created the allegedly dangerous conditions by placing the mats by the exit doors. . . [m]oreover, the testimony of the tendency of the floor mats to wrinkle was directly relevant to the issue of whether a dangerous condition existed in the store." 491 S.E.2d at 691-92. Food Lion employees gave testimony that they had seen the mats wrinkle and sometimes the "door would [ ] catch them" or they had to be "straightened out." *Id.* at 691. Plaintiffs draw a connection between *Cook* and this case as Ms. Rushton's Daughter, Wanda Poole ("Ms. Poole"), testified that she saw mats at the Post Office wrinkled "two or three times" before. (ECF Nos. 51-3 at 8:5-9:20, 10:17.)[4]

Plaintiffs hired an expert, Dr. Bryan Durig, to investigate Ms. Rushton's fall and to give his expert opinion as to whether the mat was in compliance with industry standards. (ECF No. 60-7.) Dr. Durig opined that the subject mat was not "maintained in accordance with industry standards." (*Id.* at 4-5.) Taking into consideration Dr. Durig's conclusion, Plaintiffs argue that "[b]y putting down floor mats that violated two industry standards—ANSI/NFSI B101.6-2012 and ASTM F1637—the evidence supports an inference that the Government created a dangerous condition."[5] (ECF No. 60 at 7.) Further, Plaintiffs argue that the Post Office also violated its own

---

[4] The citation cites to the page number of the docket entry, not the actual pagination of the deposition itself. Thus 8:5-9:20 refers to page 8 of the docket entry, starting at line 5 and finishing on page 9 of the docket entry at line 20.

[5] *See* ANSI/NFSI B101.6-2012 (June 5, 2012), https://www.iccsafe.org/wp-content/uploads/asc_a117/supporting_doc_3-3-1_ANSI_NFSI_B101_6-2012.pdf (Section 8.2 of B101.6-2012 states that "[w]hen mats ripple, curl or have torn edges the mats shall be removed from service and replaced with mats that lay flat." Section 8.10 of the same standards state that the edges of a mat that do not lay flat should be "secured to the floor" in some manner.); ASTM INTERNATIONAL, STANDARD PRACTICE FOR SAFE WALKING SURFACES, ASTM F1637-10 (2010), www.astm.org (last visited Oct. 28, 2017) (Section 5.4.6 states that "mats, runners, and area rugs shall be maintained so as not to create pedestrian hazards. Mats, runners, and area rugs shall not have loose or frayed edges, worn areas, holes, wrinkles, or other hazards that may cause trip occurrences.") (*See also* ECF No. 57-5 at 5-6.)

6

internal policies regarding the upkeep and placement of mats,[6] which provides evidence that it "deviated from the standard of care," thus showing breach of duty. (*Id.* at 7-8); *see Roddey v. Wal-Mart Stores E.*, 784 S.E.2d 670, 675 (S.C. 2016), *reh'g denied* (May 5, 2016) ("[e]vidence of a company's deviation from its own internal policies is relevant to show the company deviated from the standard of care, and is properly admitted to show the element of breach.") (citing *Peterson v. Nat'l R.R. Passenger Corp.*, 618 S.E.2d 903, 906 (S.C. 2005)).

The United States points out that, although Plaintiffs' expert Dr. Durig opined that the subject mat was non-compliant, he did not inspect the subject mat or an "exemplar mat." (ECF No. 62 at 3-4); (*see also* ECF Nos. 60-7 at 4, 62-1 at 3:17-4:5.) Instead, Dr. Durig based his opinions on the testimony of Ms. Rushton and Ms. Poole. (ECF No. 62 at 3); (*see also* ECF No. 62-1 at 7:5-19.)

      b. <u>The Court's Review</u>

Plaintiffs have failed to provide evidence that the Post Office created a dangerous condition pursuant to the premises liability standard enumerated in *Anderson v. Racetrac Petroleum, Inc*. Plaintiff's reliance on the court's reasoning in *Cook v. Food Lion* is misplaced. In *Cook* there was not only knowledge that the mats had a tendency to wrinkle, but that the mats had wrinkled before and had to be fixed because of their placement near the door. 491 S.E.2d at 692. In the instant

---

[6] UNITED STATES POSTAL SERVICE, SUPERVISORS SAFETY HANDBOOK, 8-7.1(i, k) (June 2008), https://www.apwu.org/sites/apwu/files/resource-files/EL-801%20Supervisors%20Safety%20Handbook%2006-08%20%283.06%20MB%29.pdf. (Rule 8-7.1(i) states that mats and rugs should be "secured," "arrange[d] to prevent slipping," and "repaired or replaced" if they have "wrinkles, turned-up edges, or tears." Rule 8-7(k) of the United States Postal Service Supervisors Safety Handbook states that "[t]he improper placement of mats or rugs (or lack of them) can cause customer injuries and result in significant liability to the Postal Service"); (*see also* ECF No. 60 at 3, 7-8.)

7

case, there is no evidence presented that shows that the mats had a tendency to wrinkle, or that Post Office employees were on notice that the mats created a dangerous condition.

Dr. Durig's assessment is speculative because he did not examine the subject mat, but came to the ultimate conclusion that ". . . the subject walk-off mat was not being maintained in accordance with industry standards and created a trip hazard at the Wagener US Post Office. The wrinkle in the walk-off mat is considered a trip hazard and the most probable cause of Ms. Rushton's unexpected fall." (ECF No. 60-7 at 6.) As part of his assessment, Dr. Durig also looked at a photograph of the subject mat and opined that it could "bunch up" if not checked routinely. (ECF No. 62-1 at 8:23-25.) However, Dr. Durig testified that he did not have a reason to believe that the mats were defective in any way (*id.* at 8:16-20) and that "a one-time [wrinkling]" of a mat does not violate the various matting policies (*id.* at 11:23-12:7.)

Defendant Cintas' expert Dr. Dickinson came to the contrary ultimate conclusion that there is no evidence to support that the "wrinkle or buckling" described by Ms. Rushton or her daughter was present when she fell. (ECF No. 57-6 at 13.) Dr. Dickinson performed an experiment creating one-inch high "ripples" with the subject mat and noted that "[i]n each attempt, the subject mat returned to its complete flat position within approximately [ten] (10) seconds." (*Id.* at 12.) In addition to Dr. Dickinson's "ripple" experiment, his examination of the subject mat also found that "[t]here were no loose or frayed edges, worn areas, holes, wrinkles, or other permanent hazardous conditions . . . that could potentially cause a trip or fall." (*Id.* at 5.)

Dr. Durig's speculative analysis is the basis for Plaintiffs' inferential argument that the government created a dangerous condition by using mats that are violative of industry standards, and creates an "inference upon an inference," which does not create a genuine issue of material

fact. *See Barwick v. Celotex Corp.*, 736 F.2d 946, 963 (4th Cir. 1984) ("[g]enuine issues of material fact cannot be based on mere speculation or the building of one inference upon another.").

In addition, Ms. Poole's testimony that she saw wrinkles in Post Office mats on previous visits does not address the question of whether the Post Office created a dangerous condition in this particular scenario. (*See* ECF No. 51-3 at 8:9-11.) Plaintiffs would have the court extrapolate from Ms. Poole's testimony that the Post Office created a dangerous situation by always placing mats by the entry door that had a tendency to wrinkle. However, Ms. Poole does not state in which mats she saw wrinkles, only the location, thus she can only speculate that because mats may have wrinkled in the past, the subject mat must have had a tendency to wrinkle, and was in fact wrinkled at the time of Ms. Rushton's fall. (ECF No. 51-3 at 9:4-20.) This speculation, however, does not create a genuine issue of material fact. *See Ennis*, 53 F.3d at 62. Even taking the evidence in the light most favorable to Plaintiffs, the court finds that Plaintiffs have not provided sufficient evidence to prove that the Post Office created a dangerous condition.

      c.   <u>The Parties' Argument as to Actual or Constructive Notice</u>

Plaintiffs argue that the Post Office was on notice that there could be a potential defect in the mat because it had not been serviced or cleaned in the weeks before Ms. Rushton fell. (ECF No. 60 at 8-9.) Plaintiffs' argument is based on the assumption that the Post Office had a system in place where the mats would be replaced on a weekly basis, and when the government terminated this system because they "[ran] out of funds" to pay Cintas, the provider of the mats, they should have been on notice of a potential defect in the mat. (*See* ECF Nos. 60 at 9, 60-2.)

The United States argues that "Plaintiffs do not delineate a specific 'defect' that put the [Post Office] on notice. At best, the [Post Office] was on notice that they needed to keep the mat clean." (ECF No. 62 at 4.) Moreover, Dr. Durig testified that the mat being left in place for four

9

(4) to five (5) weeks in a row would not by itself cause a wrinkle to form, despite some dirt or sand getting underneath the mat causing it to slide. (ECF Nos. 62-1 at 10:5-16, 62 at 4.) Further, the United States argues that Plaintiffs have not presented evidence that leaving a mat on the floor for five (5) weeks, "was an impermissible length of time for its use . . . [and was beyond its useful life, thus violating industry or internal standards, and making the mat defective]." (ECF No. 62 at 3.)

Lastly, the United States argues that "[t]here is no evidence to establish the length of time that the alleged wrinkle existed in the mat [ ]" prior to Ms. Rushton's fall, as her testimony and that of Ms. Poole only state that they saw the wrinkle after Ms. Rushton fell. (ECF Nos. 51-1 at 11, 51-2 at 13:14-20, 51-3 at 21:6-11.) The United States posits that the wrinkle could have been created by Ms. Rushton's fall, therefore "any determination as to whether the ripple or wrinkle was in the mat prior to [Rushton's] fall is purely speculative" and cannot be used to defeat summary judgment. (ECF No. 51-1 at 11 & n.8.)

   d. <u>The Court's Review</u>

Plaintiff makes an inferential leap that the government's failure to service the mat(s) in the time period before Ms. Rushton's fall, automatically placed it on notice of a potential defect. However, Plaintiffs have not provided evidence of the industry standard for how often a mat should be replaced, nor have they presented evidence or case law that establishes that the Post Office's contract with Cintas to change the mats on a weekly basis created a heightened standard of care to which the Post Office did not adhere. Additionally, Plaintiffs have not presented any evidence that the mat itself was dirty, which could cause the mat to slide and potentially wrinkle. However, Plaintiffs do offer testimony that the Post Office was clean, which was the Post Office's normal condition (ECF Nos. 51-2 at 4:19-5:5, 51-3 at 4:14-5:9.) Lastly, there is no evidence that the alleged ripple itself gave the Post Office notice of any potential defect in the subject mat. Ms.

Poole testified that she saw mats in the Post Office wrinkled on previous occasions, but she did not inform any Post Office Personnel about them. (ECF Nos. 51-3 at 9:4-20, 51-3 at 10:13-11:13.)

There is an absence of evidence above a speculative level that the Post Office was on notice of any defect in the mat. The court, therefore, finds that this lack of evidence does not show that the Post Office had actual or constructive notice of any potential defect in the subject mat.

Plaintiffs have not provided sufficient evidence to show that the Post Office created a dangerous condition, nor have they provided sufficient evidence that the Post Office had actual or constructive knowledge of the subject mat's alleged dangerous condition. *See Anderson v. Racetrac Petroleum,* 371 S.E.2d at 531. Plaintiffs' failure to provide sufficient evidence to establish an essential element of their case establishes that there is no "genuine issue of fact" for trial and that the Post Office is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322–23.

    e.  <u>Open and Obvious Danger</u>

The United States argues, secondarily, that the wrinkle in the mat was "open and obvious" and therefore the Post Office owed no duty to warn Plaintiffs. *See Callander*, 406 S.E.2d at 362-63; (ECF No. 51-1 at 12.) The court agrees.

Ms. Rushton and Ms. Poole testified that a person would be able to see any wrinkle in the mat through the doors, which shows that the danger would be "open and obvious." (ECF Nos. 51-2 at 26:8-27:8, 51-4 at 6:24-7:20.) Ms. Rushton and Ms. Poole testified that they did not look down, but that if they had, the wrinkle would be big enough to see, (*id.*) and moreover, Ms. Rushton testified that she was not distracted when she was entering the Post Office. (ECF No. 51-2 at 30:17-18.) Ms. Poole also testified that she had seen ripples before in mats in the Post Office, but she never told anyone. (ECF No. 51-3 at 10:13-11:13.) The Post Office did not have actual or

constructive notice of the mat's alleged defective nature, and thus the Post Office could not have anticipated that any harm would befall Ms. Rushton based on the alleged wrinkle in the mat and did not have a duty to warn Ms. Rushton. *Hancock v. Mid-S. Mgmt. Co.*, 673 S.E.2d 801, 803 (S.C. 2009) (". . . evidence shows that Respondent knew or should have known that a dangerous condition existed on its premises and that invitees would have to encounter this condition[,] [thus defendant had a duty to warn].") Plaintiffs have not presented evidence to the contrary.

## IV. CONCLUSION

For the reasons stated above, the court **GRANTS** the United States' Motion for Summary Judgment (ECF No. 51.)

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

November 27, 2017
Columbia, South Carolina