**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION**

| | |
|---|---|
| Linda K. Rushton and ) | |
| Kenneth Rushton, ) | |
| ) | Civil Action No.: 1:15-cv-01378-JMC |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | **ORDER AND OPINION** |
| United States of America and ) | |
| Cintas Corporation No. 2, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

Plaintiffs Linda K. Rushton ("Ms. Rushton") and her husband Kenneth Rushton filed this action seeking damages from Defendants the United States of America ("United States") and Cintas Corporation No. 2 ("Cintas") (collectively "Defendants") for injuries Ms. Rushton suffered on April 15, 2013, from an alleged slip and fall in the United States Post Office in Wagener, South Carolina. (ECF No. 23 at 2 ¶¶ 8-9.) Ms. Rushton allegedly tripped on a "ripple" in a mat when she entered the Post Office, and then fell resulting in "severe and permanent injuries." (*Id.* at ¶ 9.)

Plaintiffs allege that Cintas was negligent "in leasing, renting, and installing on the premises (of the Post Office) a defective rug that would develop ripples; in failing to properly inspect the mat; in continuing to use a defective mat after actual or constructive notice that it was defective; in using a mat past its useful life; and in such other particulars as the evidence may establish." (*Id.* at 2-3 ¶ 12.) Kenneth Rushton also brings a claim for loss of consortium with his wife as a result of her injuries. (*Id.* at 3 ¶ 14.)

1

Plaintiffs filed their initial Complaint on March 26, 2015 (ECF No. 1) against the United States, pursuant to the Federal Tort Claims Act ("FTCA"), and subsequently filed an Amended Complaint on March 30, 2016 adding Cintas Corporation as a defendant. (ECF No. 23.)[1]

This matter is before the court on Cintas' Motion for Summary Judgment as to Plaintiffs' claim for negligence against it. (ECF No. 57.) Plaintiffs responded to the Motion, and Cintas replied. (ECF Nos. 70, 71.) For the reasons stated below, the court **GRANTS** Cintas' Motion.[2]

## I. JURISDICTION

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Plaintiffs Ms. Rushton and Kenneth Rushton are citizens of Aiken County, South Carolina (ECF No. 23 at 1 ¶ 1) and Cintas is a foreign corporation (*id.* at 1 ¶ 3); (*see also* ECF No. 32 at 5 ¶ 3). Plaintiffs seek to recover more than $75,000. (ECF No. 23 at 1 ¶¶ 3, 6.)

## II. LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).

---

[1] Cintas Corporation is not the proper defendant because it has no "operating assets," thus the parties filed a Consent Motion, granted by the court, to substitute Cintas Corporation No. 2, the entity responsible for servicing the Post Office, for Cintas Corporation. (ECF Nos. 37 at 1, 38.)

[2] Plaintiff Kenneth Rushton's cause of action for loss of consortium requires proof that his injuries are a result of Cintas' negligence. *See* S.C. Code Ann. § 15-75-20 (2017); *Williams v. Lancaster Cty. Sch. Dist.,* 631 S.E.2d 286, 294 (S.C. Ct. App. 2006) ("[ ] there must be some intentional or tortious conduct for a loss of consortium claim to stand.") The court finds that there was no negligence by Cintas; therefore, the court must grant Cintas' Motion for Summary Judgment as to the claim for loss of consortium as well.

A genuine issue of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the non-moving party. *Id.*

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990) (citing *Pignons S.A. De Mecanique v. Polaroid Corp.*, 657 F.2d 482, 486 (1st Cir. 1981)). The non-moving party may not oppose a motion for summary judgment with mere allegations or denials of the movant's pleading, but instead must set forth specific facts demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 324 (1986); *Anderson*, 477 U.S. at 252 (1986); *Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249 (citing *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)). "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995) (citing *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)). "[T]he burden [to show no genuine issue of material fact] on the moving party may be discharged by 'showing'— that is, pointing out to the district court—that there is an absence of evidence to support the non[-]moving party's case." *Celotex Corp.*, 477 U.S. at 325.

"In [ ] a situation [where a party fails to make a showing sufficient to establish an essential element of their case, on which they will bear the burden of proof at trial], there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non[-]moving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to a judgment as a matter of law' because the non[-]moving party has failed to make a

3

sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp.*, 477 U.S. at 322–23.

## III.  ANALYSIS

The court sits in diversity jurisdiction, thus state substantive law must be used to adjudicate Plaintiffs' state law negligence claim. *See Auer v. Kawasaki Motors Corp.,* 830 F.2d 535, 537 (4th Cir. 1987) (". . . a federal court called upon to adjudicate a state law claim in the diversity jurisdiction must apply the relevant state law in determining the substantive rights and duties of the parties, while applying federal law to matters of procedure.") (citing *Erie Railroad v. Tompkins,* 304 U.S. 64 (1938)). Thus, South Carolina law will be used in this matter.

To prove a negligence claim, Plaintiff must show evidence that ". . . (1) [Cintas] owed [Ms. Rushton] a duty of care; (2) [Cintas] breached this duty by a negligent act or omission; (3) [Cintas'] breach was the proximate cause of [Ms. Rushton's] injuries; and (4) [Ms. Rushton] suffered injury or damages." *Dorrell v. S.C. DOT*, 605 S.E.2d 12, 15 (S.C. 2004) (citation omitted).

Extrapolating from the Complaint, Plaintiffs bring both a product liability claim and a premises liability claim against Cintas. Plaintiffs bring their product liability claim under a negligence theory and argue that Cintas breached a duty to Ms. Rushton in "leasing, renting, and installing on the premises a defective [mat] that would develop ripples." (ECF No. 23 at 2 ¶ 12(a).) Under South Carolina law, ". . . in order to find liability under any products liability theory, the plaintiff must show: (1) he was injured by the product; (2) the injury occurred because the product was in a defective condition, unreasonably dangerous to the user; and (3) that the product at the time of the accident was in essentially the same condition as when it left the hands of the defendant." *Bragg v. Hi-Ranger, Inc.*, 462 S.E.2d 321, 326 (S.C. Ct. App. 1995) (citing *Madden v. Cox*, 328 S.E.2d 108, 112 (S.C. Ct. App. 1985)). Under a negligence theory of product liability,

the plaintiff has the additional burden of demonstrating that the defendant "failed to exercise due care in some respect[.]" *Bragg,* 462 S.E.2d at 326 (citations omitted).

As to Plaintiffs' premises liability claim, Plaintiffs argue that Cintas was negligent because it failed to properly inspect the mat, it continued to use a defective mat after actual or constructive notice of its defective nature, and used the subject mat past its useful life. (ECF No. 23 at 2-3 ¶ 12(b)-(d).) Ms. Rushton was an "invitee" under South Carolina law, and with this designation, the owner of the premises has a "duty of exercising ordinary care to keep the premises in reasonably safe condition." *Milligan v. Winn-Dixie Raleigh, Inc.*, 254 S.E.2d 798, 799 (S.C. 1979)[3]; *see also Sims v. Giles*, 541 S.E.2d 857, 861 (S.C. Ct. App. 2001) (an invitee is a business guest); (ECF No. 23 at 2 ¶ 8.) The owner also has a duty to invitees to "warn of latent or hidden dangers of which [they] ha[ve] knowledge or should have knowledge." *Larimore v. Carolina Power & Light*, 531 S.E.2d 535, 538 (S.C. Ct. App. 2000) (citing *Callander v. Charleston Doughnut Corp.*, 406 S.E.2d 361 (S.C. 1991)). However, the owner does not have a duty to warn for "open and obvious dangers" unless they ". . . *should anticipate the harm despite such knowledge or obviousness.*" *Callander,* 406 S.E.2d at 362 (alteration in the original) (citing Restatement (Second) of Torts § 343(A) (1965)). This duty also includes the possessor taking "reasonable steps to protect an invitee, 'if the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, . . . or fail to protect himself against it.'" *Id.* (citing Restatement (Second) of Torts § 343(A) cmt. f (1965)).

As to the owner or operator's duty to keep the premises in reasonably safe condition, "[in order] [t]o recover damages for injuries caused by a dangerous or defective condition on a

---

[3] *See also Denton v. Winn-Dixie Greenville, Inc.,* 439 S.E.2d 292, 293 (S.C. Ct. App. 1993) ("[a merchant] is not required to maintain the premises in such condition that no accident could happen to a patron using them.")

storekeeper's premises, the plaintiff must show either (1) that the injury was caused by a specific act of the defendant which created the dangerous condition; or (2) that the defendant had actual or constructive knowledge of the dangerous condition and failed to remedy it." *Wintersteen v. Food Lion, Inc.*, 542 S.E.2d 728, 729 (S.C. 2001) (citing *Anderson v. Racetrac Petroleum Inc.*, 371 S.E.2d 530, 531 (S.C. 1988)).  This requirement applies to both foreign substances on the floor as well as mats.  *See Wintersteen,* 542 S.E.2d at 729; *Cook v. Food Lion, Inc.,* 491 S.E.2d 690, 691 (S.C. Ct. App. 1997) (applying standard to mats).

   a.   The Parties' Arguments as to Product Liability Claim

Plaintiffs argue that Cintas' Motion for Summary Judgment should be denied because ". . . the evidence supports an inference Cintas provided mats that violated [two industry standards,] ANSI/NFSI B101.6 and ASTM F1637" and thus were more prone to wrinkle.  (ECF No. 70 at 6, 7.)[4]

Cintas argues that "[r]egardless of the particular theory on which Plaintiffs rely, their product liability claim against Cintas fails as a matter of law because they cannot point to a single shred of evidence that tends to demonstrate the mat at issue here was defective, either at the time of the accident or when Cintas delivered it to the Post Office."  (ECF No. 57-1 at 8-9.)

---

[4]*See* ANSI/NFSI B101.6-2012 (June 5, 2012), https://www.iccsafe.org/wp-content/uploads/asc_a117/supporting_doc_3-3-1_ANSI_NFSI_B101_6-2012.pdf (Section 8.2 of B101.6-2012 states that "[w]hen mats ripple, curl or have torn edges the mats shall be removed from service and replaced with mats that lay flat." Section 8.10 of the same standards state that the edges of a mat that do not lay flat should be "secured to the floor" in some manner.); ASTM INTERNATIONAL, STANDARD PRACTICE FOR SAFE WALKING SURFACES, ASTM F1637-10 (2010), www.astm.org (last visited Oct. 28, 2017) (Section 5.4.6 states that "mats, runners, and area rugs shall be maintained so as not to create pedestrian hazards.  Mats, runners, and area rugs shall not have loose or frayed edges, worn areas, holes, wrinkles, or other hazards that may cause trip occurrences.")  (*See also* ECF No. 57-5 at 5-6.)

6

b. The Court's Review

Plaintiffs have not provided evidence above a speculative level to show that the subject mat was in a defective condition when Ms. Rushton fell, and no evidence that the subject mat was defective when Cintas delivered it to the Post Office.

Plaintiffs hired an expert, Dr. Bryan Durig, to investigate Ms. Rushton's fall and to give his expert opinion as to whether or not the subject mat was in compliance with industry standards. (ECF No. 57-5.)  Dr. Durig opined that the subject mat was not "maintained in accordance with industry standards." (*Id.* at 6.)  Dr. Durig's opinion is based on the testimony of Ms. Rushton and Ms. Poole (ECF No. 57-4 at 8:5-19), specifically their testimony that there was a wrinkle in the subject mat that caused Ms. Rushton to trip and fall (ECF No. 60-3 at 13:2-7, 60-4 at 20:2-10.) Dr. Durig did not examine the subject mat or any exemplar mat (ECF Nos. 57-4 at 4:17-5:5, 57-5 at 4), but states that "[t]he subject walk-off mat with a wrinkle in it would not be considered being maintained in accordance with ANSI B101.6 [and ASTM F1637] and would be considered a trip hazard"[5] (ECF No. 57-5 at 5, 6).  However, Dr. Durig testified that he had no reason to believe that the mats that were in use were defective in any way (ECF No. 57-4 at 9:16-20), and that a "one-time" wrinkling does not violate industry standards (*id.* at 13:23-14:7).

Dr. Durig does not explicitly state that the subject mat itself was defective or violated industry standards, just that it was not "maintained according to industry standards." (*See id.* at 6 ("[b]ased on a review of available information, it is concluded, to a reasonable degree of

---

[5] This statement was made taking into consideration, the fact that the subject mat was left in place for the four-to-five week period before Ms. Rushton allegedly tripped over a wrinkle in the subject mat.  Whether leaving a mat in place for four to five weeks violates any industry standard will be discussed under Plaintiffs' premises liability claim.

7

engineering certainty, that the subject walk-off mat was not being maintained in accordance with industry standards and created a trip hazard at the Wagener US Post Office.").)

The court observes that Dr. Durig's opinion, that the subject mat was not maintained according to industry standards, does not mean that the subject mat was defective as a matter of law. *See Poches v. J. J. Newberry Co.,* 549 F.2d 1166, 1168 (8th Cir. 1977) ("[t]he weight of authority holds that violations of industry standards, while relevant and material on the issues of liability on theories of negligence or strict liability, do not, without more, establish as a matter of law that the product is defective and unreasonably dangerous"); *but see Williams v. MD Cowan, Inc.,* No. 4:09-CV-459-DPM, 2011 WL 4527361, at *2 (E.D. Ark. Sept. 29, 2011) ("[a]ny violation of ANSI or API standards is only evidence of defect, it does not establish the rig was defective as a matter of law.") (citing *Poches*).   Furthermore, Dr. Durig does not state how the mats were not maintained according to industry standards.

Dr. During specifically testified that he ". . . [had not] seen anything to indicate that there was a tear or rip in [the subject mat]," which would violate industry standards (ECF No. 57-4 at 9:18-20), and Cintas' expert Dr. Lee V. Dickinson observed the same (ECF No. 57-6 at 5). Moreover, there is no evidence that the alleged ripple in the subject mat was a "repetitive occurrence" that would potentially violate industry standards.  Ms. Poole stated that she saw wrinkles in a mat in the same location by the door where Ms. Rushton fell, but was unsure whether the subject mat was the mat with a wrinkle that she saw before.  (ECF No. 57-3 at 5:19-6:8); (*see also* ECF No. 57-4 at 14:10-15:5 (Dr. Durig's testimony regarding Ms. Poole not being "crystal clear" as to which mat(s) she saw wrinkles on prior to Ms. Rushton's fall).)  Lastly, Dr. Durig also testified that if what Ms. Rushton and Ms. Poole testified to was incorrect, then the basis of his opinion would also be incorrect.  (ECF No. 57-4 at 8:10-19.)

Plaintiffs do not provide any additional evidence of the subject mat's defective nature beyond Dr. Durig's assessment that the mats were not maintained in accordance with industry standards. Thus, Plaintiffs' argument that the mats provided by Cintas were defective, and therefore were defective at the time of Mrs. Rushton's fall is speculative and based on Dr. Durig's inferential analysis. Such argument does not create a genuine issue of material fact; instead it creates an "inference upon an inference." *See Barwick v. Celotex Corp.*, 736 F.2d 946, 963 (4th Cir. 1984) ("[g]enuine issues of material fact cannot be based on mere speculation or the building of one inference upon another."). In addition, Plaintiffs have not provided any evidence that the subject mat was defective when it left Cintas' possession which is an element of the product liability standard. Because Plaintiffs have failed to provide sufficient evidence of an "essential element of their claim," the court must grant summary judgment to Cintas as to Plaintiffs' product liability claim. *Celotex Corp.*, 477 U.S. at 322–23.

    c.  <u>The Parties' Arguments as to Premises Liability Claim</u>

Plaintiffs argue that Cintas created a dangerous condition by providing mats that violated two industry standards. (ECF No. 70 at 7.) Further, Plaintiffs argue that Cintas had notice of the potentially dangerous condition because it ". . . [chose] to leave the mats at the Post Office knowing that dirty mats have a greater propensity to buckle resulting in a trip hazard." (*Id*.) Moreover, Plaintiffs argue that Cintas owed a duty of care to Ms. Rushton to ensure the premises were safe, specifically the mat, because it had a ". . . contractual relationship with the Government to install, service, and maintain the mats at the Post Office[,] and . . . deviated from th[is] standard of care by providing a mat that violated two industry standards." (*Id.* at 10.)

Cintas argues that "[t]here is neither allegation nor evidence that Cintas was a possessor of the Post Office property where [Ms.] Rushton fell. . . . [t]herefore, to the extent Plaintiffs seek to

9

hold Cintas liable on a premises liability theory, the evidence does not support such a claim, and Cintas is entitled to summary judgment." (ECF No. 57-1 at 14-15.) However, Cintas also argues that ". . . even if Cintas *did* owe some heightened duty to [Ms.] Rushton as an invitee at the Post Office, the conspicuous lack of any evidence tending to show that the mat was defective when it left Cintas' control, [thus creating a dangerous condition], or that Cintas had [actual or constructive knowledge of the defective nature of the mat] vitiates whatever [premises liability claim] Plaintiffs maintain against Cintas." (*Id.* at 15) (emphasis in the original).

   d. The Court's Review

The court observes that "[o]ne who controls the use of property has a duty of care not to harm others by its use." *S.C. Farm Bureau Mut. Ins. Co. v. S.E.C.U.R.E. Underwriters Risk Retention Grp.*, 554 S.E.2d 870, 875 (S.C. Ct. App. 2001) (citing *Nesbitt v. Lewis*, 517 S.E.2d 11, 14 (S.C. Ct. App. 1999)). Moreover, "[t]he responsibility for an injury negligently caused by a defect or dangerous condition or activity in or on real property usually attaches to the owner or possessor, by virtue of his control thereof[.]" *Id.* (citing 62 Am. Jur. 2d Premises Liability § 4, at 351 (1990)).

Plaintiffs would have the court extrapolate from its argument that Cintas' contract with the Post Office to provide mats demonstrates that Cintas owed Ms. Rushton a duty to exercise due care. However, the exact nature of Cintas' contractual relationship with the Post Office (through the United States Government) is not within the evidentiary record and is disputed. (*See* ECF Nos. 57-1 at 14-15, 70 at 10.) Nonetheless, this fact is not material because it will not change the disposition of the case. *See Anderson,* 477 U.S. at 248. Plaintiffs have not provided sufficient evidence as to whether Cintas created a dangerous condition, had notice of a dangerous condition,

10

or was required under any standard of care to provide mats in a certain manner or time period, which is necessary to prove premises liability.

Plaintiffs' expert Dr. Durig opined that the subject mats were not maintained in accordance with industry standards (ECF No. 57-5 at 6), but also testified that he did not have any reason to believe that the mats were defective in any way (ECF No. 57-4 at 9:16-20). Plaintiffs' argument regarding the defective nature of the subject mat, based on Dr. Durig's analysis, is speculative as stated above, and creates an "inference upon an inference" which does not create a genuine issue of material fact. *See Barwick*, 736 F.2d at 963. Plaintiffs do not provide any additional evidence that Cintas created a dangerous condition, therefore, there is insufficient evidence to prove that Cintas created a dangerous condition.

Cintas also did not have actual or constructive notice of any potential defect in the subject mat. Plaintiffs' argument that Cintas' allowance of the subject mat to stay at the Post Office for five (5) weeks after the Government stopped paying for weekly cleaning gave notice to Cintas of its "propensity to wrinkle" (ECF No. 70 at 9), is without sufficient evidentiary support. First, there is no evidence that the government paid for weekly "cleaning[,]" as the government had a system to "replace" the mats on a weekly basis. (ECF No. 60-1.) Secondly, Plaintiffs have not provided evidence that leaving a mat for five (5) weeks violates any industry standard or that leaving it for that amount of time gives a party notice of a mat's propensity to wrinkle. Dr. Durig testified that the mat being left in place for four (4) to five (5) weeks in a row would not by itself cause a wrinkle to form, despite some dirt or sand getting underneath the mat causing it to slide. (ECF No. 57-4 at 12:5-16.) In addition, Ms. Rushton and Ms. Poole's testimony that the Post Office was clean, as it usually was, suggests that the subject mat was not dirty, and therefore was less likely to have

11

dirt or sand underneath it causing it to slide and potentially wrinkle. (*See* ECF Nos. 51-2 at 4:19-5:5, 51-3 at 4:14-5:9.)

Cintas did not have actual or constructive notice of any alleged defect in the subject mat, and moreover, there is no evidence presented by Plaintiffs that demonstrates Cintas' knowledge of the subject mat's alleged propensity to wrinkle when it was left in place for five (5) weeks. The court must therefore find that there is no genuine issue of material fact in dispute as to Cintas' knowledge of a potential defect in the subject mat creating a dangerous condition.

Plaintiffs have not provided sufficient evidence to prove that Cintas either created a dangerous condition or had knowledge of a potential dangerous condition and failed to remedy it. Therefore, Plaintiffs have failed to provide sufficient evidence of the "essential element[s] of their claim," and the court must grant summary judgment to Cintas as to Plaintiffs' premises liability claim. *See Celotex Corp.*, 477 U.S. at 322–23.

e. <u>Open and Obvious Danger</u>

In addition to its argument that Plaintiffs have not presented sufficient evidence to prove premises liability, Cintas argues that even if they owe a duty to Ms. Rushton to keep the premises safe, the wrinkle in the mat was "open and obvious" and therefore it had no duty to warn her, and Cintas should be granted summary judgment. *See Callander*, 406 S.E.2d at 362-63; (ECF No. 57-1 at 15-16.) The court agrees.

Ms. Rushton and Ms. Poole testified that a person would be able to see any wrinkle in the mat through the doors, which demonstrates that the danger would be "open and obvious." (ECF Nos. 57-2 at 15:8-16:8, 51-4 at 6:24-7:20.) Ms. Rushton and Ms. Poole testified that they did not look down, but that if they had, the wrinkle would be big enough to see, (*id.*) and moreover, Ms. Rushton testified that she was not distracted when she was entering the Post Office. (ECF No. 57-

2 at 18:17-18.) Ms. Poole also testified that she had seen ripples before in mats in the Post Office, but she never told anyone. (ECF No. 57-3 at 7:13-8:13.) Cintas did not have actual or constructive notice of the subject mat's alleged defective nature, and thus Cintas could not have anticipated that any harm would befall Ms. Rushton based on the alleged wrinkle in the mat and therefore did not have a duty to warn Ms. Rushton. *Hancock v. Mid-S. Mgmt. Co.*, 673 S.E.2d 801, 803 (S.C. 2009) (". . . evidence shows that Respondent knew or should have known that a dangerous condition existed on its premises and that invitees would have to encounter this condition[,] [thus defendant had a duty to warn].") Plaintiffs have not presented evidence to the contrary.

## IV.     CONCLUSION

For the reasons stated above, the court **GRANTS** Cintas' Motion for Summary Judgment (ECF No. 57.)

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

December 8, 2017
Columbia, South Carolina

13